F43KENCS

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                          13 CR 30 (JSR)

5   EDGAR ENCARNACION-LAFONTAINE,

6               Defendant.

7   ------------------------------x

8                                    New York, N.Y.
                                     April 3, 2015
9                                    3:05 p.m.

10

Before:

11
                      HON. JED S. RAKOFF,
12
                                     District Judge
13

14                       APPEARANCES

15

PREET BHARARA,
16      United States Attorney for the
        Southern District of New York
17  EMIL J. BOVE III
        Assistant United States Attorney
18

NATALI TODD
19  KAREN CHARRINGTON
        Attorneys for Defendant

20

21

22

23

24

25

F43KENCS

1          (Case called)

2          THE COURT:  Will the parties please identify

3   themselves for the record.

4          MR. BOVE:  Good afternoon, your Honor.  Emil Bove, for

5   the government.

6          THE COURT:  Good afternoon.

7          MS. TODD:  Good afternoon, your Honor.  Natali Todd,

8   for Mr. Encarnacion, and also present with me is

9   Ms. Charrington and Mr. Encarnacion.

10         THE COURT:  Good afternoon.

11         We are here for sentence.  Let me find out first:  Are

12  there any objections to the presentence report other than the

13  numerous objections set forth in the parties' written

14  submissions?

15         MR. BOVE:  Not from the government, your Honor.

16         MS. TODD:  Nothing additional, your Honor.

17         THE COURT:  Okay.

18         So let's deal with those objections.  Most of them

19  relate to the calculation under the guidelines, which of course

20  the Court must take into account but it's not bound by in terms

21  of the ultimate sentence.

22         The probation office calculates the offense level at

23  41, Criminal History Category of I, and a guideline range there

24  of 324 to 405 months.  The defense counsel calculates the

25  offense level of 31, a criminal history category, everyone

F43KENCS

1    agrees, of I, and a guideline range of 108 to 135 months.  The

2    government agrees with the probation calculation.

3          I'm in between, as follows:

4          First, with respect to the quantity of marijuana, the

5    jury convicted Encarnacion of conspiring to distribute 100

6    kilograms or more, and while both probation and the government

7    contend that at least a thousand kilograms of marijuana was

8    involved, I think this greatly exaggerates what Encarnacion

9    himself knew or reasonably foresaw was the scope of the

10   conspiracy in terms of the weight of the drugs.  So I

11   calculated that, for sentencing purposes, as 100 kilograms.

12         Second, with respect to the cocaine quantity, there we

13   had testimony -- not testimony but a confession earlier on from

14   Encarnacion that one of the boxes that he confessed to having

15   transported had 20 kilograms of cocaine.  There was testimony

16   that there were five boxes and that he saw at least three

17   boxes, or at least Goris testified that he saw the three boxes

18   of cocaine, and that Goris testified that he tallied the

19   cocaine from, what he saw, as 70 packages, each containing one

20   kilogram, and I accept that.  And so I calculate the cocaine

21   quantity as 70 kilograms.

22         The defense argues, while we're on the subject of

23   this, because it relates also to mandatory minimums, that the

24   defendant qualified for safety-valve eligibility.  I think it's

25   patently evident that Mr. Encarnacion did not truthfully

F43KENCS

 1    provide all information necessary to qualify for the safety

 2    valve, and so that application is denied.

 3         With respect to enhancements, on the drug conspiracy

 4    group, with respect to the two-level enhancement for use of a

 5    threat, I think that that was implicit in statements that

 6    Encarnacion left in his voicemail with Goris, which Encarnacion

 7    said that he was not alone, that that he was going to find

 8    Goris and make him pay or make the family pay if Goris didn't

 9    come.  This is all within the context of the statements made on

10    the very night that Goris stole the money and therefore was

11    part of the drug conspiracy.  So I will award that enhancement.

12         With respect to the two-level enhancement for

13    obstruction of justice in the drug conspiracy, I never give

14    that enhancement for testimony given on the stand, not because

15    I thought Mr. Encarnacion was truthful on the stand -- I found

16    his testimony untruthful -- but because, as a policy matter, I

17    believe that the obstruction for giving false statements in

18    testimony is seriously flawed in that it considerably chills

19    people from taking the stand and, thus, while in this case the

20    defendant was guilty, there are many innocent people who will

21    be deterred from taking the stand because they are being told

22    in advance by their lawyers that if the jury or the judge finds

23    them untruthful, they will suffer a further enhancement for

24    obstruction of justice.  So as a policy matter, I do not award

25    that enhancement.  I have set out my reasoning for this in

F43KENCS

1   greater length in written opinions that I have issued in other

2   cases.  So that will not be granted.

3          With respect to the three-level enhancement for

4   committing an offense while on pretrial release, that is

5   clearly warranted, and so that will be granted.

6          Turning to the other grouping for threats, the

7   two-level enhancement for use of a threat is clearly called for

8   there.

9          The one-level enhancement for quantity of funds

10  demanded, Encarnacion says that he did not know the actual

11  amount.  And I think that the inferences that the government

12  argues that he did are not sufficient, so I will not award that

13  enhancement.

14         Again, with respect to the adjustment for obstruction

15  of justice under the threats grouping, for the same reasons

16  that I did not award it in the drug grouping, I don't award it

17  in the threats grouping.

18         Finally, with respect to the three-level enhancement

19  for committing an offense while on pretrial release, that

20  clearly was called for and it will be granted.

21         So the result of all this is that when you take all

22  those calculations and you take the grouping rules, you wind up

23  with an offense level of 39 and, of course, a Criminal History

24  Category of I, and a guideline range of 262 to 327 months.

25         Now, having said all that, no one who is familiar with

6

F43KENCS

1   this Court will be surprised to hear that that is just a modest

2   factor in how this Court will arrive at sentencing, given the

3   Court's views of the sentencing guidelines in general and how

4   they're arrived at, which this case and all these Mickey Mouse

5   calculations well illustrates.

6           So, unless anyone has anything further they want to

7   say on the calculation, let's turn to the real issue, which is

8   what the sentence should be under Section 3553(a).  And on

9   that, I'll hear first from defense counsel, then from

10  government counsel, and then from the defendant if he wishes to

11  be heard.

12          MS. TODD:  Thank you, your Honor.

13          The Court's resolution with respect to the objections

14  to the presentence report has essentially shortened my argument

15  tremendously.  In saying that, I will rely primarily on my

16  written submissions to the Court --

17          THE COURT:  Yes, all your issues are preserved for

18  appeal.

19          MS. TODD:  Thank you.

20          But I will ask the Court, in sentencing

21  Mr. Encarnacion, to be reasonable in what the Court decides is

22  the appropriate sentence for him and to consider his personal

23  history and characteristics and be mindful of the principles of

24  fairness and proportionality.

25          Mr. Encarnacion is 47 years old.  He's been in this

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F43KENCS

1    country for 37 years.  Most of that time --

2              THE COURT:  Let me take the liberty of interrupting.

3    And in this, what I am about to say, is something the

4    government may want to respond to as well when they get to

5    their portion of the colloquy.

6              Mr. Encarnacion previously entered a plea under which

7    the guideline calculation would have been 151 to 188, I

8    believe, or 180-something.  And of course he might have gotten

9    lower than that, that was just a guideline calculation, but he

10   had every reason to believe, having negotiated that with the

11   government, that that was something that he believed was, or

12   his counsel believed was, a fair resolution, assuming arguendo

13   that he was guilty of the crimes.

14             Now, he asserted he was not guilty of the crimes; and

15   therefore I allowed him to withdraw his plea and go to trial.

16   But he has now been found guilty of those crimes.  And the

17   probation office here, I think, in recognition of that, as well

18   as all the other factors under Section 3553(a), which I must

19   and do consider, recommended a sentence within that range, 151

20   months.

21             Now, I'm not sure it should be that low but I

22   certainly don't see why it should be lower than that.  That

23   surely took account of a lot of the things you're arguing for

24   now.  Given the potential of a much, much greater guideline

25   calculation, it was a fairly reasonable resolution that

F43KENCS

1    undoubtedly took account of the fact that he had no criminal

2    history -- I also take account of that, I think that's

3    important -- it took account of the fact that he had worked

4    hard in various legitimate jobs, took account of his age, it

5    took account of his family circumstances, all things that I

6    also take account of and weigh in his favor.

7              But why would I want to go lower than 151?

8              MS. TODD:  Well, your Honor, I don't think at the time

9    that the plea agreement, prior plea agreement, was drafted, the

10   government was fully aware of Mr. Encarnacion's history in

11   terms --

12             THE COURT:  What is it you think they didn't know

13   about?

14             MS. TODD:  Well, when you negotiate a plea, part of

15   the consideration is that you are saving the government a

16   tremendous amount of expense from going to trial, that's one

17   consideration, and allowing a speedy resolution --

18             THE COURT:  On that, of course, I should impose a

19   higher penalty, right?

20             MS. TODD:  No, because then that would be penalizing

21   Mr. Encarnacion for exercising his constitutional right to go

22   to trial.

23             THE COURT:  It won't be penalizing him.  It would be

24   saying he's no longer entitled to the credit that he otherwise

25   receives for saving the government all that time and effort,

F43KENCS

1    which is right there in the guidelines, as you know.  It's not

2    regarded as a penalty under the law.

3              MS. TODD:  Well, your Honor, I don't think that would

4    be a fair assessment because ultimately he has to be punished

5    for his role in the offense and the actual crime.  And in doing

6    so, a number of factors, some of which the Court has just

7    listed, should be considered.  We are talking about a

8    47-year-old man who within the hierarchy of the conspiracy --

9              THE COURT:  Just so we're clear, you know we are not

10   bound in any way, shape or form by the prior plea agreement.

11   It has been vacated and he went to trial, as was his right, and

12   I was very happy to accord him that right.  But just looking at

13   it realistically, didn't that reflect, among other things, all

14   the factors that you're now bringing to my attention?

15             MS. TODD:  I don't think so, your Honor, because the

16   guidelines are calculated based on numbers, in terms of

17   enhancements, the amount of narcotics involved, a certain

18   number of points are awarded for certain categories and --

19             THE COURT:  Yes, of course on that, we have the

20   calculation that we now have --

21             MS. TODD:  Right.

22             THE COURT:  -- that is 262 to 327 months.  And the

23   government would argue that, and the probation office argue,

24   that it should have been even higher.

25             MS. TODD:  I'm saying that the guideline calculation

F43KENCS

```
1    in and of itself, even though it's a starting point, it's not
2    per se reasonable.
3               THE COURT:  I totally agree with that, I totally agree
4    with that.
5               But now, for example, I do find, though I did not as a
6    policy matter give an enhancement for this in terms of
7    guideline calculation, but I do find he lied blatantly on the
8    stand.  Should I disregard that totally?
9               MS. TODD:  I don't think -- no, your Honor, the Court
10   should not disregard, the Court should consider all factors
11   relevant to sentencing, and it's simply a matter ultimately
12   what the Court considers to be fair and reasonable with respect
13   to this individual in terms of the punishment that is
14   sufficient for his crimes, in that it shouldn't be greater than
15   necessary to punish him.
16              THE COURT:  I agree.
17              MS. TODD:  It shouldn't take away all hope of
18   possibility.
19              THE COURT:  I guess the point is this -- and let's
20   forget about the false testimony altogether because, for the
21   reasons I've already indicated, I think as a policy matter it's
22   not a good idea to punish somebody for that.  I just want the
23   record to reflect that I wasn't blind to what I thought was his
24   perjurious testimony.  But I now know infinitely more about the
25   facts of this case than I did at the time that we had the
```

F43KENCS

1    pretrial proceedings.  And a great deal of what I know is not

2    very favorable to your client.  So, in ignorance of all that, I

3    might have been more sympathetic to some of the arguments

4    you're now making but of course now I know all that.

5          Well, I'll come back to you, Ms. Todd, in just a

6    minute.  Let me hear from the government because the question I

7    have for the government is this:  The government had full

8    knowledge of this case before it went to trial.  The government

9    clearly, by entering into a plea bargain that contemplated 151

10   to 180 or so months, which the government always supports the

11   guidelines being their bible, the government clearly thought

12   that that was sufficient to fulfill all the requirements of

13   Section 3553(a), or they would not, in dereliction of their

14   duty to see that justice is done, have entered into that plea.

15         So how can I give a higher sentence than that, when

16   the government in effect told me, through their actions during

17   the plea bargain, that that was sufficient?

18         MR. BOVE:  Judge, the plea bargain in this case, we

19   acknowledge that happened right on the eve of trial, of course.

20   At the same time, the plea offer that was extended contemplated

21   a number of considerations that we've raised at other times in

22   these proceedings that were very important to us.  And they

23   relate to litigation risk and they relate to the human costs of

24   calling as witnesses some of the lay witnesses who the

25   defendant has now been convicted of conveying threats to.  It

F43KENCS

1    allowed the government, that plea offer allowed the

2    government --

3              THE COURT:  But surely that might be why you would not

4    want the highest sentence that you might otherwise be able to

5    achieve, but surely you would never, would you, enter into an

6    agreement that allowed the defendant to receive a sentence that

7    did not carry out the functions of Section 3553(a), would you?

8              MR. BOVE:  I can't disagree with that statement.  But

9    I would also say that another reason I think the guidelines are

10   different today than they were when we made that plea offer

11   before the trial is that there were then a number of

12   proceedings after that, and a lot of time elapsed and the

13   investigation continued.  So if we're focused on 3553(a), there

14   are, we believe, additional aggravating factors that were

15   identified post that plea and post even the withdrawal of that

16   plea that bear on sentencing today.  Some of them came up

17   during the trial.

18             For instance, when Ms. Gomez from the DR testified

19   about the phone call she received and the threat that there

20   will be blood, I think it's fair at this point, at sentencing,

21   your Honor will recall that there were some evidentiary

22   objections to Facebook items that showed both unexplained

23   wealth that appeared to be linked to the defendant in the

24   Dominican Republic as well as associates that the defendant

25   admitted during his testimony were his, possessing firearms,

F43KENCS

1    all things that made his conduct in context, from our

2    perspective, more serious.

3            I think we are at the point in the proceeding where

4    we're talking about 3553(a), and I do think that there were

5    some factors, even setting aside the human cost, the very real

6    cost of having those lay witnesses come in to testify twice

7    since then, that are aggravating and do warrant punishment at

8    least where your Honor has calculated the guidelines here

9    today.

10           THE COURT:  All right.  Let's go back to Ms. Todd.

11           MS. TODD:  Just with respect to the last statements

12   that Mr. Bove referred to regarding unexplained wealth:  I know

13   the government does not have any proof that the property that

14   they referred to belonged to Mr. Encarnacion.  That was his

15   father's property.  And I actually have the deed, which

16   predated from 19 --

17           THE COURT:  That doesn't play any role in my

18   calculation.

19           MS. TODD:  Right.

20           THE COURT:  What does play a role with the Court is

21   the very point that the prosecutor just made, which I do think

22   was brought home vividly to the Court, which was the way

23   Mr. Encarnacion terrorized people like Ms. Gomez in furtherance

24   of his threat conspiracy.  That's very difficult to swallow.

25           MS. TODD:  Just a moment, your Honor?

F43KENCS

1          THE COURT:  Yes.

2          (Pause)

3          MS. TODD:  Your Honor, my recollection of that

4    particular phone call was no phone number, no voice

5    recognition, and I understand it's circumstantial but that is,

6    I think, a stretch to attribute that --

7          THE COURT:  It's part, and I'm not just relying on

8    just that, although I don't regard it as a stretch at all, but

9    I think there was plenty of evidence, as the jury in effect

10   found, that Mr. Encarnacion --

11         MS. TODD:  The question --

12         THE COURT:  -- is not above making implicit physical

13   threats, not just to people he's trying to get money back from,

14   both to their family and to others, an entirely despicable

15   conduct on his part.

16         MS. TODD:  May I, your Honor?

17         THE COURT:  Of course.

18         MS. TODD:  The question to the government was, or at

19   least my interpretation is, what did they not know at the time

20   of the plea that they learned later.  The government's position

21   from day one was that Mr. Encarnacion made the threats, was

22   responsible for the Facebook threats.  We have all of the

23   documentation with respect to the specific language that was

24   used in those Facebook communication.  They had all of the

25   phone calls, they had spoken with respect to the marijuana

F43KENCS

1   conspiracy, they had been speaking with and meeting with the

2   Herrera brothers for a substantial amount of time and knew the

3   scope of the conspiracy.

4          So I'm not sure that there was any additional

5   information in terms of the plea that was offered then that was

6   different than came out at trial.  They were aware of all of

7   that information and, with that information, determined that

8   the plea that they offered was sufficient.

9          THE COURT:  Okay.  Anything else that you wanted to

10   add?

11          MS. TODD:  Judge, I'll rely on my submission.  I'll

12   just ask the Court to be very reasonable.  I think, at the very

13   least, the mandatory minimum of ten years is a substantial

14   sentence for this 47-year-old man, who has never had any prior

15   contact with the criminal justice system.  He will be deported.

16   He has lost everything he has worked for, having been in this

17   country for over 37 years, and he will be starting from the

18   ground up at whatever age that is past middle age, at whatever

19   sentence the Court decides, even with a mandatory minimum

20   sentence.  So I'm asking the Court to be very reasonable and

21   consider that Mr. Encarnacion was not a leader, a manager, and

22   he was not running the operation.

23          Thank you.

24          THE COURT:  Thank you.

25          Let me hear from Mr. Encarnacion if he wishes to be

16

F43KENCS

1    heard.

2           (Pause)

3           THE COURT:   I see him shaking his head, no so I take

4    it he doesn't wish to be heard.

5           MS. TODD:   He does not wish to.  He relies on his

6    letter to you.

7           THE COURT:   All right.

8           This sentence presents -- it presented for the

9    probation office and it presents to this Court -- some

10   interesting policy issues.  No matter how you look at what

11   Mr. Encarnacion did, you cannot help but recognize that the

12   guideline calculations are absurdly high.  Under the probation

13   office calculation, which the government agreed with, the

14   calculation was 324 to 405 months -- in other words, 30 years

15   or so -- for a gentleman who was, under any circumstance, a

16   relatively modest participant in these conspiracies.

17          Even under my calculations, the guideline range is 262

18   to 327 months, in other words, 26, 27 years, something like

19   that.  All this illustrates, in the Court's view, is how

20   totally out of whack the guidelines are with any fair appraisal

21   of the individual circumstances and the individual role of this

22   defendant.

23          Of course, the Court is bound by the mandatory

24   minimums since I find he didn't qualify for the safety valve,

25   but the dilemma that to some extent the Court confronts is

F43KENCS

1    that, while I strongly feel that Mr. Encarnacion should not be

2    penalized in any way, shape or form for going to trial -- I

3    think that is another evil of mandatory minimums and

4    guidelines -- nevertheless, the Court now has a much fuller

5    picture of what kind of person Mr. Encarnacion is, and it's not

6    a particularly pretty picture.

7            Yes, it is true, the Court gives him full credit for

8    the fact that he has no prior criminal convictions, that he has

9    worked hard for years at two different jobs, that he has a

10   supportive family and many other positive qualities that I

11   don't wish to minimize at all, but I now recognize how willing

12   a participant he was in each of the crimes of which he now

13   stands convicted.

14           This was not, as defense counsel at times tries to

15   argue -- eloquently but in the end unconvincingly to the

16   Court -- someone who, if not as innocent as he proclaims, at

17   least was dragged into something of which he was, at best,

18   peripheral.  The Court has no doubt -- and it was proven, in

19   the Court's view, beyond all doubt -- that he was a very

20   willing participant in every aspect of the crimes, the serious

21   crimes, that he engaged in.

22           Nevertheless, I agree with the defense counsel that

23   the government basically knew all this when they entered into

24   their arrangement with him, and they felt -- and I think this

25   is useful to the Court -- they felt that a sentence of 151 to

F43KENCS

```
1    180-some months, which is what they would have asked for under
2    the guilty plea arrangement, was sufficient to satisfy the
3    purposes of Section 3553(a).
4            And while I agree with the government that, if you
5    will, the vividness of some of the defendant's misconduct was
6    brought home to everyone, including, I'm sure, the prosecutor
7    and certainly the Court, by some of the evidence that came out
8    at trial, and while Mr. Encarnacion's own testimony was, in the
9    Court's view, blatantly false, nevertheless, the fact that the
10   sentence that the government believed even at the time, just
11   shortly before trial, that it entered into the proposal to
12   allow him to plead to a guideline range of 151 to
13   180-something, is itself a factor the Court should weigh.  It
14   should weigh in particular because the Court does not wish to
15   penalize any defendant for going to trial.
16           So, weighing all those things together, though part of
17   me would impose a much heavier sentence, I'm going to impose a
18   sentence of 180 months.  Specifically, the sentence of the
19   Court is that the defendant is sentenced to 180 months on
20   Counts Two, Four and Six, to run concurrently with each other;
21   he is sentenced to an additional 60 months on Count Three, to
22   run concurrently with the other counts; so that the total term
23   of imprisonment is 180 months.
24           He will be sentenced on all counts to three years of
25   supervised release, on terms that I will get to in a moment.
```

F43KENCS

1          No fine will be imposed because the Court makes the

2     finding that this defendant is not in a position to pay any

3     meaningful fine now or in the foreseeable future.

4          There is, however, a $500 mandatory special assessment

5     that must be paid.

6          The terms of supervised release are:  First, the

7     mandatory conditions that the defendant shall not commit any

8     other federal, state or local crime; that the defendant shall

9     not illegally possess a controlled substance; that the

10    defendant shall not possess a firearm or a destructive device;

11    that the defendant shall refrain from any unlawful use of a

12    controlled substance and submit within 15 days of his placement

13    on supervised release to one drug test, to be followed by two

14    further drug tests, as directed by the probation officer; and

15    that the defendant shall cooperate in the collection of DNA.

16         There will also be imposed the standard conditions of

17    supervision 1 through 13.  They appear on the face of the

18    judgment and will be gone over with the defendant by the

19    probation officer when the defendant begins his period of

20    supervised release.

21         Finally, there are the special conditions:  First, the

22    defendant shall obey the immigration laws and comply with the

23    directives of the immigration authorities; and, second, that

24    the defendant within 72 hours of his release from prison will

25    report to the nearest probation office to begin his period of

F43KENCS

1  supervised release; and he will be supervised by the district

2  of his residence.

3          Now, before I advise the defendant of his right of

4  appeal, is there anything else either counsel wishes to raise

5  with the Court?

6          MR. BOVE:  Judge, with respect to supervised release,

7  because the defendant was convicted of an object with respect

8  to Count Two under 841(b)(1)(A), I believe the mandatory

9  minimum term, even though that's is academic given the

10 immigration consequences of the conviction, is five years.

11         THE COURT:  Let me take a look.  Hold on.

12         (Pause)

13         THE COURT:  Yes, you're right.  So I amend what I just

14 said:  So it will be five years of supervised release under the

15 same terms and conditions previously mentioned, though, as you

16 point out, given the immigration consequences, it's probably as

17 a practical matter moot, but nevertheless it will be five

18 years.

19         MR. BOVE:  Thank you, Judge.  Nothing else.

20         THE DEPUTY CLERK:  Judge, I think you skipped saying

21 Count One.

22         THE COURT:  Oh, no, no, no --

23         MR. BOVE:  I think subsequently there was a mention of

24 all counts, Judge, which I took to --

25         THE COURT:  So everything I said about Count Two also

F43KENCS

1    applies to Count One.

2              Anything from the defense?

3              MS. TODD:  No, your Honor.

4              THE COURT:  So, Mr. Encarnacion, you have the right to

5    appeal this sentence.  Do you understand that?  You have to

6    speak.

7              THE DEFENDANT:  Yes.

8              THE COURT:  And if you can't afford counsel for the

9    appeal, the Court will appoint one for you free of charge.  Do

10   you understand that?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  All right, very good.

13             MR. BOVE:  Your Honor, before we conclude, the

14   government moves to dismiss all underlying counts and

15   indictments.

16             THE COURT:  Yes, that motion is granted.

17             MS. TODD:  Your Honor, one administrative thing:  With

18   the Court's authorization, I'd like to request a copy of the

19   sentencing minutes.

20             THE COURT:  Yes, of course.

21             MS. TODD:  Thank you.

22             (Adjourned)

23

24

25